UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| v. | } | Case No.: 2:18-cr-00256-RDP-SGC-1 |
| | } | |
| **CHRISTOPHER LAVAN WILLIAMS,** | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

This case is before the court on Defendant Christopher Lavan Williams' Motion to Dismiss the Indictment. (Doc. # 19). In this case, the United States has charged Williams with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. # 1). Before he was indicted in this case, Williams was previously convicted in an Alabama state court of possessing the same firearm under Alabama's felon-in-possession statute, Ala. Code. § 13A-11-72(a). (Doc. # 19-1 at 4-6). Williams now seeks dismissal of this prosecution because he claims it violates the Fifth Amendment's Double Jeopardy Clause, which guarantees that "No person shall . . . be twice put in jeopardy" "for the same offence." U.S. Const. amend. V. Though there are strong arguments that the Double Jeopardy Clause as originally understood would bar this prosecution, Williams' argument is foreclosed by Supreme Court precedent. Unless and until the Supreme Court overrules that precedent, the United States is free to proceed with this prosecution.

**I.    Factual and Procedural Background**

Christopher Lavan Williams had several run-ins with the law prior to possessing the firearm that is the subject of this prosecution. According to the indictment in this case, the State

of Alabama convicted Williams of second degree burglary in 2016, receipt of stolen property in the second degree in 2013, and first degree robbery in 2009. (Doc. # 1). Each of these offenses is a crime punishable by imprisonment for a term exceeding one year. (*Id.*).

On December 1, 2017, Alabama authorities arrested Williams and charged him with unlawfully possessing a firearm in violation of Alabama's felon-in-possession statute, Ala. Code. § 13A-11-72(a). The arrest warrant and criminal information charged Williams with possessing a "Taur[us] 44 Special" pistol after having been previously convicted of first degree robbery, which is a "crime of violence" under Alabama's felon-in-possession statute. (Doc. # 19-1 at 1, 6). Williams pleaded guilty to the charge on April 17, 2018 and received a fifteen-year sentence (two years of incarceration to be served immediately, split with thirteen years of probation). (*Id.* at 4-5). Shortly thereafter, the Alabama Department of Corrections released Williams pursuant to the community corrections program. (Doc. # 22 at 2). Several weeks later, while on release under the community corrections program, Williams was arrested on a federal warrant for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.*). Williams' federal indictment and arrest were based on the same December 1, 2017 conduct involving a "Taurus .44 caliber revolver" that provided the basis for Williams' state conviction. (Doc. # 1).

II.     Analysis

The Fifth Amendment's Double Jeopardy Clause provides, "No person shall . . . be twice put in jeopardy" "for the same offence." U.S. Const. amend. V. Though the Clause's text apparently imposes an absolute prohibition on successive prosecutions for the same crime, the Supreme Court has read an important exception into the Double Jeopardy Clause. The same government may not twice prosecute an individual for the same offense, but two separate sovereigns -- for instance, a state government and the federal government -- may do so. *See*

*United States v. Lanza*, 260 U.S. 377, 382, 385 (1922) (holding that a prior state conviction for making, transporting, and selling liquor did not bar a subsequent federal prosecution based on the same acts). The "separate sovereigns" or "dual sovereignty" doctrine, as it has come to be known, is controlling here. Under that doctrine, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" *Heath v. Alabama*, 474 U.S. 82, 88 (1985) (quoting *Lanza*, 260 U.S. at 382). Because Alabama and the United States are separate sovereigns, Williams' single act (possessing a firearm on December 1, 2017 while having a prior felony conviction) is "an offense against the peace and dignity of both" sovereigns and thus punishable "by each." *Lanza*, 260 U.S. at 382. Unless and until the Supreme Court overrules *Lanza* and related precedents, the United States is free to proceed with this prosecution.

### III. Reconsidering the Separate Sovereigns Exception to the Double Jeopardy Clause

There may well be good reasons for overruling the "separate sovereigns" exception to the Double Jeopardy Clause. Recently, the Supreme Court agreed to hear a case asking the Court to do just that. *See Gamble v. United States*, 138 S. Ct. 2707 (2018) (granting petition for writ of certiorari). As explained below, the court agrees with the petitioner in *Gamble*: the Double Jeopardy Clause, as originally understood, bars successive prosecutions for the same offense, even when those prosecutions are brought by separate sovereigns. The Clause's text and the common-law backdrop against which it was enacted all contravene the separate sovereigns doctrine. Moreover, the separate sovereigns exception conflicts with core principles of federalism—including the seemingly "counterintuitive insight" that "freedom is *enhanced* by the creation of two governments, not one." *Bond v. United States*, 564 U.S. 211, 220-21 (2011) (emphasis added). As one of the Nation's "inferior Courts," this court is bound by the Supreme

Court's decisions, including the separate sovereigns exception to the Double Jeopardy Clause. U.S. Const. art. III, § 1. But, soon, it will be for the Supreme Court to assess the historical aberration that is the separate sovereigns doctrine and to determine if it is time to return to the original meaning of the Double Jeopardy Clause.

### A. The Text of the Double Jeopardy Clause Is Absolute

The Double Jeopardy Clause's phrasing is absolute. It provides unambiguously that no person shall be "twice put in jeopardy" "for the same offence." U.S. Const. amend. V. The Clause makes no exceptions based on the identity of the prosecutor: if two offenses are "the same," the Clause forbids successive prosecutions, regardless of whether the prosecutions are brought by the same government or different ones.

The Supreme Court has long recognized that two crimes are the "same offence" if their elements are the same. That is, two separate statutory provisions create distinct offenses only if "each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). This common-sense understanding of the words "same offence" is the one the text of the Double Jeopardy Clause most naturally reflects. Any natural reading of "same offence" makes it difficult (if not impossible) to understand those words to exclude crimes that have the exact same elements but are prosecuted by separate sovereigns.

Without question, the Clause could have been written to permit subsequent prosecutions for the same offense by separate sovereigns. In fact, one member of the first Congress proposed language that would have done just that. The original draft of the Double Jeopardy Clause prohibited "more than one trial or one punishment for the same offence." 1 Annals of Cong. 753 (1789). Yet, Representative Partridge proposed inserting, after "same offence," the words "by any law of the United States." *Id.* Partridge's proposal would have

permitted the federal government to prosecute a defendant previously convicted of the same offense under state law or any law other than a "law of the United States." *Id.* But the Partridge amendment was rejected and a Double Jeopardy Clause written in absolute terms was adopted instead. Congress's rejection of the Partridge amendment confirms what the Clause's plain text suggests: "same offence" means crimes with the same elements, regardless of whether those crimes are prosecuted by the same sovereign.

### B. The Original Understanding of the Double Jeopardy Clause Is Inconsistent with the Separate Sovereigns Exception

Significant historical evidence confirms that the Double Jeopardy Clause was originally understood to bar successive prosecutions of the same offense by separate sovereigns. The Framers understood the Double Jeopardy Clause to embody a well-settled principle of the English common law. As one member of the first Congress put it, the Clause "was declaratory of the law as it now stood." 1 Annals of Congress 753 (1789) (remarks of Rep. Livermore). Joseph Story explained that the Clause "is another great privilege secured by the common law." 3 Joseph Story, *Commentaries on the Constitution of the United States* 662 (1833). And the Supreme Court itself has recognized that the "guarantee against double jeopardy" "became established in the common law of England long before this Nation's independence" and was subsequently "carried into the jurisprudence of this Country through the medium of Blackstone." *Benton v. Maryland*, 395 U.S. 784, 795 (1969). Thus, to determine the original scope of the Double Jeopardy Clause, one must look to the "English practice, as understood in 1791." *Grady v. Corbin*, 495 U.S. 508, 530 (1990) (Scalia, J., dissenting), *overruled by United States v. Dixon*, 509 U.S. 688 (1993); *see Ex parte Lange*, 85 U.S. 163, 170 (1873) (the Double Jeopardy Clause protects against successive prosecutions "so far as the common law gave that protection").

The Double Jeopardy Clause was based on the English common-law pleas of *autrefois*

5

*acquit* (former acquittal) and *autrefois convict* (former conviction). *Grady*, 495 U.S. at 530 (Scalia, J., dissenting); 4 William Blackstone, *Commentaries on the Laws of England* 329-30 (1769). Both pleas were grounded in a "universal maxim of the common law of England, that no man is to be brought into jeopardy of his life, more than once, for the same offence." Blackstone, *supra*, at 329. A defendant could enter either plea "upon a [second] prosecution for the same identical act and crime" and so bar the second prosecution. *Id.* at 330. Crucially, the settled English rule at the time of the American founding was that a plea of *autrefois acquit* or *autrefois convict* barred a second prosecution for the same crime even if the first prosecution was before a wholly separate sovereign. Thus, English courts consistently barred English prosecutions where the defendant had previously been prosecuted by a foreign government (for example, France, Portugal, or Spain) for the same crime.

A case in point is *King v. Roche*, 168 Eng. Rep. 169, 169 (K.B. 1775). There, an English prosecutor charged Roche with a murder committed in South Africa. *Id.* Roche entered a plea of *autrefois acquit*, claiming that a Dutch court in South Africa had previously acquitted him of the same murder. *Id.* The English court agreed that a prior acquittal by the Dutch court would bar prosecution in England "because a final determination in a Court having competent jurisdiction is conclusive in all Courts of concurrent jurisdiction." *Id.* at 169 n.a. To make its point unmistakably clear, the court explained, "if A., having killed a person in Spain, were there prosecuted, tried, and acquitted, and afterward were indicted here, at Common Law, he might plead the acquittal in Spain in bar." *Id.*

*Roche* itself relied on another widely cited decision, *King v. Hutchinson*. In *Hutchinson*, the defendant had committed a murder in Portugal, where he was then acquitted of the crime. *Id.* Later, English authorities apprehended Hutchinson and sought to convict him of the murder in

England, "the King being very willing to have him tried here for the same offence." *Id.* But the court held that "as he had been already acquitted of the charge by the law of Portugal, he could not be tried again for it in England." *Id.* Though there is no surviving original report of *Hutchinson*, at least three reported cases in addition to *Roche* cite that decision as settling English law on the issue of successive prosecutions by separate sovereigns. *See Beak v. Tyrrell*, 89 Eng. Rep. 411, 411 (K.B. 1688), *sub nom Beak v. Thyrwhit*, 87 Eng. Rep. 124; *Burroughs v. Jamineau*, 25 Eng. Rep. 235 (Ch. 1726), *sub nom Burrows v. Jemino*, 93 Eng. Rep. 815; *Gage v. Bulkeley*, 27 Eng. Rep. 824, 826-27 (K.B. 1744). Moreover, English treatises from before and after the time of our Nation's founding uniformly recognized the *Hutchinson* rule. *See* J.A.C. Grant, *Successive Prosecutions by State and Nation: Common Law and British Empire Comparisons*, 4 UCLA L. Rev. 1, 10 n.36 (1956) (citing English treatises).

The course set by early decisions of the Marshall Court was to apply the Double Jeopardy Clause in a manner consistent with the English common law. The leading case is *Houston v. Moore*, 18 U.S. 1 (1820). There, the Supreme Court held that state and federal courts had concurrent jurisdiction to prosecute a defendant for deserting the militia. *Id.* at 14. The defendant sought to cast constitutional doubt upon that conclusion, arguing that concurrent jurisdiction "might subject the accused to be twice tried for the same offence," in violation of the Double Jeopardy Clause. *Id.* at 13. The Court rejected this argument with a straightforward statement of the traditional *Hutchinson* rule: "if the jurisdiction of the two Courts be concurrent, the sentence of either Court, either of conviction or acquittal, might be pleaded in bar of the prosecution before the other." *Id.*

Two weeks after deciding *Houston*, the Supreme Court again endorsed the *Hutchinson* rule in *United States v. Furlong*, 18 U.S. 184 (1820). That case involved an Irish defendant

7

charged with both piracy and the murder of an English victim aboard an English ship. *Id.* at 185, 193. One issue in the case was whether U.S. courts had concurrent jurisdiction (with other sovereign nations) to punish the defendant for a murder committed "by a foreigner upon a foreigner" "at sea on board a foreign vessel." *Id.* at 194. The court explained that for offenses like piracy that are "within the criminal jurisdiction of all nations," "there can be no doubt that the plea of *autre fois acquit* would be good in any civilized State, though resting on a prosecution instituted in the Courts of any other civilized State." *Id.* at 197.

*Houston* and *Furlong* thus show that the earliest Justices of the Supreme Court understood the Double Jeopardy Clause to bar successive prosecutions for the same crime, regardless of whether the prosecutions were brought by the same or separate sovereigns. It was not until many decades after the founding that the Supreme Court began to suggest (in dicta) that the Double Jeopardy Clause might not bar successive prosecutions by state and federal governments. *See United States v. Marigold*, 50 U.S. 560, 570 (1850) (suggesting that "the same act might . . . constitute an offence against both the State and Federal governments, and might draw to its commission the penalties denounced by either"); *Moore v. Illinois*, 55 U.S. 13, 20 (1852) (explaining that "[t]he same act may be an offence" against both a state and the federal government and that double punishment for the act means "only that by one act [the offender] has committed two offences"). And not until the 1920s, in the prohibition-era case *United States v. Lanza*, 260 U.S. 377 (1922), did the separate sovereigns doctrine achieve the status of a holding. Thus, prior to stuttering in *Marigold* and *Moore* and veering off course in *Lanza*, the Court's early cases confirm that the framing generation understood the Double Jeopardy Clause to embody *Hutchinson*'s rule against successive prosecutions by separate sovereigns.

In *Lanza*, the Supreme Court paid scant attention to the original meaning of the Double

Jeopardy Clause and instead focused primarily on a policy concern—that forbidding successive state and federal prosecutions might permit states to undermine federal prohibition laws. *See Lanza*, 260 U.S. at 385 ("If a state were to punish the manufacture, transportation and sale of intoxicating liquor by small or nominal fines, the race of offenders to the courts of that state to plead guilty and secure immunity from federal prosecution for such acts would not make for respect for the federal statute or for its deterrent effect."). The Court did not so much as mention *Houston*, *Furlong*, or the traditional English rule barring successive prosecutions by separate sovereigns that those cases endorsed.

### C. The Separate Sovereigns Doctrine Contravenes Core Principles of Federalism

Besides conflicting with the text and original understanding of the Double Jeopardy Clause, the separate sovereigns exception also runs afoul of core principles of federalism. The Framers divided governmental power between the state and federal governments in large part to supply "a double security . . . to the rights of the people." Federalist No. 51, at 323 (James Madison) (Clinton Rossiter ed., 1961). Federalism, in other words, was designed to "secure[ ] to citizens the liberties that derive from the diffusion of sovereign power." *Bond*, 564 U.S. at 221. But the separate sovereigns exception turns that principle on its head. Rather than enhancing individual liberty, the doctrine permits the federal and state governments to do together what neither one could do alone—subject the same person to double punishment for a single crime. *Abbate v. United States*, 359 U.S. 187, 203 (1959) (Black, J., dissenting). Justifying double prosecutions such as this one in the name of federalism is, as Justice Black aptly put it, "a misuse and desecration of the concept."[1] *Bartkus v. Illinois*, 359 U.S. 121, 155 (1959) (Black, J., dissenting).

---

[1] The court intends no criticism of the Government here. For nearly 100 years, the Supreme Court has permitted a prosecution like this one under the separate sovereigns exception. But, as noted above, the court questions whether the Supreme Court drove the train off the tracks in *Lanza*.

9

The separate sovereigns exception is especially suspect in our federal system because the states, unlike foreign nations, are not entirely independent sovereigns under the Constitution. Rather, the states and the federal government are "kindred systems," and "parts of ONE WHOLE." Federalist No. 82, at 493 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Even if it were justifiable to reject the English rule and permit a second domestic prosecution after a *foreign* conviction or acquittal, it is quite another thing to permit a second prosecution after a coordinate government that is part of the same national system has once prosecuted an individual. The Supreme Court will this term decide whether the separate federal and state sovereigns that comprise our federal system -- so "intimately bound by political ties" -- must respect the criminal judgements of one another at least as much as "nations who [we]re strangers to each other" did at the time of our Nation's founding. *State v. Antonio*, 2 Tread. 776, 781 (S.C. Const. App. 1816).

## IV.  Conclusion

This prosecution highlights a key reason the Framers incorporated the common-law protection against successive prosecutions into the Bill of Rights. Williams has already been convicted once for being a felon in possession of a firearm on December 1, 2017 by the State of Alabama, and has received a fifteen-year sentence for his crime. The federal government now seeks to prosecute him a second time for this offense. The court is bound to let this prosecution proceed under existing Supreme Court precedent, and Williams' Motion to Dismiss the Indictment (Doc. # 19) is therefore due to be denied. But this case nonetheless highlights the pressing need for the Supreme Court to reconsider the separate sovereigns exception to the Double Jeopardy Clause and say whether fidelity to the Constitution and the liberty it secures will countenance a prosecution like this one.

An Order consistent with this Memorandum Opinion will be entered.

DONE and ORDERED this October 16, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE